















VLS   8/4/03   9:44

3:02-CV-00264   KINTERA INC V. CONVIO INC

*82*

*OBJ.*

1   DAVID E. KLEINFELD (Bar No. 110734)
    BARRY J. TUCKER (Bar No. 164163)
2   CHAD R. FULLER (Bar No. 190830)
    HELLER EHRMAN WHITE & McAULIFFE LLP
3   4350 La Jolla Village Drive, 7th Floor
    San Diego, California  92122-1246
4   Telephone:  (858) 450-8400
    Facsimile:  (858) 450-8499
5
    Attorneys for Defendant
6   CONVIO, INC.

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10  KINTERA, INC., a Delaware corporation,     Case No.: 02 CV 0264 M (LSP)

11                         Plaintiff,          **DEFENDANT CONVIO INC.'S
                                               OPPOSITION TO KINTERA INC.'S
12         v.                                  SUPPLEMENTAL BRIEF REGARDING
                                               THE PARTIES' MOTIONS TO COMPEL**
13  CONVIO, INC., a Delaware corporation,
                                               Date:  August 12, 2003
14                         Defendant.          Time:  10:30 am
                                               Judge: Hon. Leo. S. Papas
15                                             Courtroom: G

16

17

18

19

20

21

22

23

24

25

26

27

28

FILED

03 AUG -1  PM 4:00

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:                    DEPUTY

Heller
Ehrman
White &
McAuliffe LLP

# I.    INTRODUCTION

Kintera should be compelled to produce the affidavits of Mr. Anderson and Ms. Tomich ("affidavits") and the McNeill documents for at least the following reasons:

- The affidavits are pure witness testimony, given under oath, and devoid of any attorney work-product.

- Kintera has not and cannot refute the determination reached in *United States v. Nobles* and its progeny, that work-product does not protect prior statements that contain crucial evidentiary and impeachment material.

- By using the affidavits as a sword on its public website, Kintera effectively waived any application of the work-product privilege.  Kintera cannot now attempt to use the same statements as a shield and preclude Convio from discovering their contents.

- Kintera has not met its burden of proving that the documents were created for an attorney, for the primary purpose of obtaining legal advice.

# II.    LEGAL ARGUMENT

## A. Convio is Entitled to the Affidavits Prior to Deposing Mr. Anderson and Ms. Tomich for Purposes of Cross Examination and Impeachment

The U.S. Supreme Court, first in *Hickman v. Taylor* and later in *United States v. Nobles* carved out an exception to the work-product doctrine for statements that can be used to impeach or corroborate witness testimony, particularly where the parties have unequal access to information. *Hickman v. Taylor,* 329 U.S. 495, 511 (1947); *United States v. Nobles,* 422 U.S. 225, 249-51 (1975).  The concurrence in *Nobles* definitively states that the work-product protection cannot be used to hide documents that are necessary for trial preparation and impeachment purposes. *United States v. Nobles,* 422 U.S. at 249-51 ("[W]ork-product notions have been thought insufficient to prevent discovery of evidentiary and impeachment material..."). Moreover, numerous courts agree that prior statements that are relevant for purposes of impeachment or corroboration must be disclosed.[1]

---

[1] *See* Convio's Supplemental Brief, p. 4-5, lines 17-28, 1-6.

1    Kintera's supplemental brief incorrectly asserts that Convio is not entitled to the

2    affidavits for impeachment or corroboration purposes. Not only do Kintera's cases not

3    overrule *Nobles* and its clear pronouncement sanctioning the use of prior statements for

4    impeachment purposes, but they are also distinguishable from the instant matter. For

5    instance, *Director, Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304 (D.C.

6    Cir. 1997) is plainly distinguishable for two reasons. First, the *Director* facts involve the

7    subpoena of <u>handwritten notes</u> that were taken by attorneys during an interview, where

8    neither party disputed that the notes were attorney work-product. *Director, Office of Thrift*

9    *Supervision*, 124 F.3d at 1307. Second, the *Director* court concluded that the appellant did

10    not demonstrate sufficient need for the interview notes because two other attorneys were

11    present at the interview, and both attorneys gave their notes to the party seeking them. *Id.* at

12    1308.[2]

13    Another case cited by Kintera, *A.I.A. Holdings, S.A.*, supports the proposition that

14    affidavits should be compelled where they are essential to the litigation and where one party

15    does not have access to substantially the same information as the other party:

16
17        The importance of the materials sought to the party seeking them in preparation
        of his case and the difficulty he will have obtaining them by other means are
18        factors noted in the Hickman case. The courts should also consider the
        likelihood that the party, even if he obtains the information by independent
19        means, will not have the substantial equivalent of the documents the production
        of which he seeks.

20    *A.I.A. Holdings, S.A.*, 2002 U.S. Dist. LEXIS at *8 (citing the 1970 Advisory Committed

21    Notes to Rule 26(b)(3)). All of the factors discussed by *A.I.A.* support production of the

22    witness affidavits. First, the affidavits are central to Convio's defense of Kintera's suit

23

24

25        [2] Likewise, *Spurill v. Winner Ford of Dover*, 175 F.R.D. 194 (D. Del. 1997), involved
    a factually distinct situation where the plaintiff brought suit based on a racially hostile work
26    environment. *Id.* at 195. The *Spurill* court revealed no basis for denying the defendant's
    request for the production of witness statements, and failed to distinguish its decision from
27    the conclusion of many other courts, including the District of Alaska's (Ninth Circuit)
    decision in *Dobbs v. Lamonts Apparel, Inc.*

28

Heller
Ehrman
White &
McAuliffe LLP

DEFENDANT CONVIO INC.'S OPPOSITION TO KINTERA INC.'S SUPPLEMENTAL BRIEF        02CV 0264M(LSP)

1   because they relate directly to the validity of Kintera's CD-ROM claim.  Moreover, the

2   affidavits are the only means by which Convio can verify the witnesses' deposition

3   statements, statements that will likely serve as their trial testimony.   Second, Convio cannot

4   obtain the affidavits, or indeed substantially the same information, in any other way.  The

5   affidavits represent Mr. Anderson's and Ms. Tomich's freshest recollection, before the were

6   represented by counsel or involved in the present litigation.

### B. Kintera Waived Any Right to Assert the Work-Product Protection By Publicly Disclosing the Existence and Substance of the Affidavits

Since the beginning of this case, Kintera has misused the witness affidavits by making improper, extrajudicial disclosures of their contents on its public website.  Kintera's supplemental brief does not and cannot refute the basic principle that an opportunistic, partial disclosure of otherwise protected work-product waives the right to assert work-product protection.  *See In Re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. 1982) (work-product protection is not necessary when "a party seeks greater advantage from its control over work product than the law must provide to maintain a healthy adversary system"); *see also Welland v. Trainer*, No. 00 CIV. 0738 (JSM), 2001 WL 1154666, at *1 (S.D.N.Y. Oct 01, 2001) (cautioning that defendants' work-product protection could have been waived if defendants had "sought to use the investigation itself as a 'sword' and a 'shield' or made some extrajudicial disclosure *about* the investigation for their own benefit") (emphasis added); *Griffith v. Davis*,  161 F.R.D. 687, 699 (C.D. Cal. 1995) ("Where a party discloses work product for reasons not related to the facilitation of its trial preparation, the work product protection may be waived.").

None of the work-product cases cited by Kintera consider the effect of the type of gratuitous, out-of-court disclosures Kintera has made here.  For example, in *In re MTI Technology  Corp. Securities Litigation II*, No. SACV 00-0745 DOC (ANx), 2002 U.S. Dist. LEXIS 13015 (C.D. Cal. June 13, 2002), the partial disclosure at issue was essentially required by law.  In *MTI Technology*, the plaintiff's complaint mentioned six unnamed former employees of the defendant only to satisfy the heightened pleading requirements of the

Heller
Ehrman
White &
McAuliffe LLP

DEFENDANT CONVIO INC.'S OPPOSITION TO KINTERA INC.'S SUPPLEMENTAL BRIEF          02CV 0264M(LSP)

1   Private Securities Litigation Reform Act. *Id.* at *2-*3. This is a far cry from the case at hand

2   where Kintera has revealed the contents of the witness statements, not to advance its case

3   against Convio, but instead in a calculated publicity maneuver. Furthermore, in *MTI*

4   *Technology* the defendants based their waiver argument solely on the testimonial-use

5   exception to work-product protection, a type of waiver that Convio does not claim. *Id.* at

6   *16-*17. The passage quoted in Kintera's Supplemental Brief states that a disclosure in the

7   complaint was not a testimonial use, and that the defendant's cited cases therefore did not

8   apply. *Id.* at *17. Such a statement is irrelevant to the case at issue.

9       Kintera's analogy to the disclosures made in a privilege log is similarly unpersuasive.

10  *See* Kintera's Supplemental Brief p. 5, lines 11, 23. Kintera suggests that disclosing the

11  contents of a protected document in a privilege log does not waive work-product protection

12  because partial disclosures cannot effect a waiver of the whole. This is a misstatement of the

13  law. Disclosure of the contents of a document in a privilege log does not waive work-product

14  protection because that disclosure is an affirmative requirement of the rules of procedure, a

15  requirement a party must meet *in order to keep work product protected.*[3] *See* FED. R. CIV. P.

16  26(b)(5); *see also Alexander v. Federal Bureau of Investigation*, 198 F.R.D. 306, 312 (D.

17  D.C. 2000) (explicitly refusing to find waiver of attorney client privilege because "the

18  purpose of a privilege log" is to inform the other side of the character of withheld

19  documents). As such, disclosing the contents of a document in a  privilege log is fully

20  consistent with—and even necessary for—"the purpose of maintaining the secrecy of such

21  information...." *Griffith*, 161 F.R.D. at 700. Thus, although Kintera's brief description of the

22  affidavits in its privilege log does not effect a waiver, Kintera's use of the substance of the

23  affidavits on its website does.

24      Kintera also attempts to compare the website disclosures in this case to an attorney's

---

[3] As a factual matter, Kintera's description on its website of the specific allegations contained in the affidavits goes well beyond what is required in a privilege log. *See* FED. R. CIV. P. 26(b)(5) (when claiming privilege or work-product protection, a party must simply, "describe the nature of the documents, communications, or things not produced").

1  use of his or her notes at trial.  Kintera's Supplemental Brief at 5, lines 7-11, 22-23 .

2  However, in the scenario presented by Kintera, *there is no disclosure at all.*  By contrast, here

3  Kintera has told the world that the affidavits contain allegations of specific acts of copyright

4  infringement and theft of trade secrets.  The difference between an attorney's private use of a

5  document and the public use of the substance of a document is fundamental and dispositive:

6      [R]evealing that a communication contained [a] fact discloses the substance of the

7      communication and, thus, waives the privilege (or the work-product protection if

8      disclosed to an adversary) as to that communication.

9  *Robinson v. Texas Auto. Dealers Ass'n.*, 214 F.R.D. 432, 448 (E.D. Tex. 2003).

10      By attempting to use the substance of the affidavits in the marketplace while hiding the

11  details from Convio in this litigation—by trying to use work-product protection as both a

12  'sword and a shield'—Kintera has forfeited any purported entitlement to protect the affidavits

13  as work-product.

### C. The McNeill Documents Are Not Protected By the Attorney-Client or Work-Product Protection Because They Were Not Communicated to or Prepared for An Attorney For Purposes of Obtaining Legal Advice

16  Convio does not dispute that the attorney-client privilege can apply to communications

17  between **counsel** and corporate employees.  However, Kintera has not made that showing.

18  The case law **cited by Kintera** in its supplemental brief establishes a litany of conditions that

19  Kintera must satisfy in order to preclude production of the McNeill documents, conditions

20  that Kintera cannot satisfy.  *Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 200 (E.D.N.Y. 1988)

21  ("The burden of establishing the elements of the privilege rests with the party asserting it.").

22  For instance, Kintera's brief cites *Cuno* which states:

23      In order for the privilege to apply, (1) the communication should have been
        made for the purpose of securing legal advice; (2) the employee making the
24      communication should have done so at the direction of his corporate superior;
        (3) the superior made the request so that the corporation could secure legal
25      advice; (4) the subject matter of the communication should have been within
        the scope of the employee's duties; and (5) the communication should not have
26      been disseminated beyond those persons who need to know the information.
27

28

Heller
Ehrman
White &
McAuliffe LLP

DEFENDANT CONVIO INC.'S OPPOSITION TO KINTERA INC.'S SUPPLEMENTAL BRIEF      02CV 0264M(LSP)

1   *Id.* at 203.  In *Cuno*, the court concluded that a number of the documents at issue were not

2   protected by the attorney-client privilege because the communications were not made for the

3   primary purpose of obtaining legal advice.  *Id.* at 203.  The court noted that, even though the

4   cover sheets of the documents appeared to support application of the privilege, an

5   examination of the *contents* of the documents themselves reveled that they were not

6   privileged.  *Id.*

7        As described in Convio's Supplemental Brief, the majority of the McNeill documents

8   pertain to "document collection efforts related to demonstration CDs."  Such efforts are not

9   protected because they do not constitute communications, and have nothing to do with

10  *securing* legal advice.  Moreover, it is not clear from the privilege log that the documents

11  were collected at the request of the Kintera employee's supervisors.  It is equally unclear that

12  collection efforts related to demonstration CDs were in the scope of Kintera's employee's

13  duties, or that the collection of information was not disseminated beyond those who needed to

14  know it.  In all likelihood, a mass e-mail was sent to Kintera employees and, in the process,

15  employees outside of the scope of the protection were copied, and the privilege was waived.

16       Another case cited by Kintera belies the application of the attorney-client privilege to

17  the McNeill documents.  The court in *F.C. Cycles International, Inc. v. Fila Sport*, 184

18  F.R.D. 64 (D. Md. 1998) <u>granted</u> plaintiff's motion to compel purportedly privileged

19  documents.  *Id.* at 72.  The *Fila* court imposed three conditions on the application of the

20  attorney-client privilege.  First, the communications cannot be relayed to those who do not

21  need the information to carry out their work or make effective decisions on the part of the

22  company.  *Id.* at 71.  Second, "routine, non-privileged communications...do not attain

23  privileged status solely because in-house or outside counsel is 'copied in' on correspondence

24  or memoranda."  *Id.*  Finally, only legal, and not business information, is protected by the

25  privilege.  *Id.*

26       Again, Kintera does not satisfy the standard advanced by its own legal authority.

27  Kintera does not demonstrate that the McNeill documents contain legal, not business,

28

Heller
Ehrman
White &
McAuliffe LLP

6

DEFENDANT CONVIO INC.'S OPPOSITION TO KINTERA INC.'S SUPPLEMENTAL BRIEF            02CV 0264M(LSP)

1   information or that Kintera's in-house counsel was not simply copied on any communication

2   that Kintera wished to protect.  Moreover, on the face of Kintera's July 21, 2003 privilege log,

3   it appears that the McNeill documents consist of correspondence that address and discuss a

4   Kintera CD-ROM.  These documents appear to relate directly to the Komen CD and thus

5   were seemingly created for a business, rather than a legal purpose.

6          In addition to undermining the application of the attorney-client privilege, Kintera's

7   brief also demonstrates that the work-product protection should not apply to the McNeill

8   documents.  Kintera cites *Bank Brussels Lambert v. Credit Lyonnais*, 160 F.R.D. 437

9   (S.D.N.Y. 1995), which  devoted the bulk of its opinion to determining whether the attorney-

10  client privilege was waived, something that is not at issue in the instant matter.  *Bank*

11  *Brussels* also determined that the work-product protection did not apply to a set of documents

12  because they were not prepared in anticipation of litigation, and they were created for

13  business, rather than litigation, purposes.  *Id.* at 448-49.  The same rationale applies to the

14  McNeill documents.  Pre-existing documents which were collected by an employee and later

15  transmitted to an attorney necessarily were not prepared for litigation and cannot be protected

16  as work-product.

17         Kintera's own authorities cite complex tests for determining whether the attorney-

18  client and work-product doctrines protect documents that were developed by employees, and

19  transmitted to counsel.  Kintera bears the burden of proving that all of the elements of these

20  tests are satisfied.  *United States v. ChevronTexaco Corp.*, 291 F.Supp.2d 1065, 1076, 1080-

21  81 (N.D. Cal. 2002).  Because Kintera has not and cannot make the requisite showing, the

22  McNeill documents should be produced or, at a minimum, reviewed *in camera*.

23  **D. The TeamRaiser Document is Protected By the Attorney-Client Privilege and**
    **Should Not be Compelled**

24         The TeamRaiser document was created by David Hart, Vice President of Engineering

25  at Convio on or about March 22, 2003 for the purposes of aiding Convio's counsel in its

26  understanding of the case and development of its defense.  *See* Supplemental Declaration of

27  David Hart, at ¶¶ 2, 5.  As such, the document falls squarely within the purview of the

28

Heller
Ehrman
White &
McAuliffe LLP

7

1    attorney-client privilege. *In Re Fischel*, 557 F.2d 209, 211 (9th Cir. 1977). The 18 other

2    documents referenced in the TeamRaiser document were all produced by Convio during the

3    April 21, 2003 production. Thus, Kintera already has all of the underlying facts and

4    documents in its possession. Distinct from the other 18 documents that Convio already

5    produced, the TeamRaiser document was generated for the express purposes of this litigation.

6    *See* Supplemental Declaration of David Hart, at ¶8. Moreover, the document synthesizes the

7    information pertaining to this litigation, *as described* by Convio's Vice President of

8    Engineering, for Convio's attorney. *Id.* at ¶¶7-8.

9         Kintera's supplemental brief comments on the general language of Convio's

10   supplemental declarations, stating that they contain boilerplate, broad language. The

11   declaration language is broad out of necessity -- Convio was understandably cautious about

12   revealing too much information concerning the TeamRaiser document so as not to disclose

13   the substance of the communication, and waive the application of the privilege. The Court

14   requested the supplemental declarations to verify that: (1) the document at issue was not an

15   off-the-shelf document that Convio gave to its outside counsel and; (2) the document was

16   prepared for litigation and to assist Convio in obtaining legal advice. The declarations clearly

17   establish these requirements. Convio's outside counsel and the Vice President of Engineering

18   both attest to the fact that the TeamRaiser document was created for counsel, for this

19   litigation, and was not simply a pre-existing document that Convio had in its files.

20        If the Court determines that the TeamRaiser document is privileged, the Court should

21   also strike any discovery requests that were propounded as a result of Kintera's viewing of

22   the document. Although Kintera contends that the discovery was generated without referring

23   to the TeamRaiser document, it was obviously created in reference to its contents. This is

24   plain from the requests which ask specific, detailed questions, directly incorporating the

25   privileged document. For instance, Kintera's May, 2003 requests state that, although

26   Kintera's previously referred to the Convio product as Friend to Friend, Friend2Friend and/or

27   Friendraiser, the May, 2003 requests re-define Convio's product as TeamRaiser. Moreover,

28

Heller
Ehrman
White &
McAuliffe LLP

DEFENDANT CONVIO INC.'S OPPOSITION TO KINTERA INC.'S SUPPLEMENTAL BRIEF          02CV 0264M(LSP)

1    Kintera specifically requests all 18 documents mentioned in the TeamRaiser document.

2        Finally, Kintera contends that the TeamRaiser document is akin to the unprivileged

3 documents at issue in *United States v. Burroughs*, 167 F.R.D. 680 (S.D. Cal. 1996). Kintera

4 is wrong. In *Burroughs*, the communications were made to the attorney to facilitate the

5 attorney's compliance with 31 U.S.C. § 3730(b)(2), the formal disclosure statement required

6 by the Department of Justice in connection with filing a false claims action. *Id.* at 682. As

7 the *Burroughs* court determined, such communications were not made for the purpose of

8 seeking legal advice, or in confidence, because the documents were going to be disclosed to

9 the government for use by the government, not the attorney. *Id.* at 683. In the instant matter,

10 however, the TeamRaiser document was created for and transmitted to Convio's counsel to

11 aid in the litigation and with the expectation that the document was and would remain

12 confidential.

13 **III.   CONCLUSION**

14        For the foregoing reasons, Convio respectfully requests that the Court compel Kintera

15 to produce the affidavits of Mr. Anderson and Ms. Tomich and the McNeill documents,

16 documents 36, 41, 65 and 70-78 on Kintera's July 21, 2003 privilege log and deny Kintera's

17 motion to compel production of the TeamRaiser document and prohibit Kintera from serving

18 any discovery derived from the TeamRaiser document.

19

20 DATED: August 1, 2003        HELLER EHRMAN WHITE & McAULIFFE LLP

21

22                By: _____

23                      CHAD R. FULLER
                     Attorneys for Defendant CONVIO, INC.

24

25 SD 621932 v1

26

27

28

Heller
Ehrman
White &
McAuliffe LLP

DEFENDANT CONVIO INC.'S OPPOSITION TO KINTERA INC.'S SUPPLEMENTAL BRIEF      02CV 0264M(LSP)

1  DAVID E. KLEINFELD (Bar No. 110734)
   CHAD R. FULLER (Bar No. 190830)
2  HELLER EHRMAN WHITE & McAULIFFE LLP
   4350 La Jolla Village Drive, 7th Floor
3  San Diego, California  92122-1246
   Telephone:  (858) 450-8400
4  Facsimile:  (858) 450-8499

5  Attorneys for Defendant
   CONVIO, INC.

6

7                    UNITED STATES DISTRICT COURT

8                 SOUTHERN DISTRICT OF CALIFORNIA

9

10  KINTERA, INC., a Delaware corporation,      Case No.:  02 CV 0264 M (LSP)

11                        Plaintiff,            **CERTIFICATE OF SERVICE BY
                                                FACSIMILE AND FEDERAL EXPRESS**
12        v.

13  CONVIO, INC., a Delaware corporation,

14                        Defendant.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Heller
Ehrman
White &
McAuliffe LLP

CERTIFICATE OF SERVICE                                      02CV 0264M(LSP)

# PROOF OF SERVICE

I, Michelle C. Henderson, declare as follows:

I am and was at the time of the service mentioned in this declaration, employed in the County of San Diego, California.  I am over the age of 18 years and not a party to the within action.

My business address is:

Heller Ehrman White & McAuliffe LLP, 4350 La Jolla Village Drive, 7th Floor, San Diego, CA  92122-1246.

On August 1, 2003, I served the following documents:

**DEFENDANT CONVIO INC.'S OPPOSITION TO KINTERA INC.'S SUPPLEMENTAL BRIEF REGARDING THE PARTIES' MOTIONS TO COMPEL**

on the parties to this action by placing true and correct copies in a sealed envelope(s) addressed as follows:

| Attorney/Addressee | Party(ies) Served |
|---|---|
| Ethan B. Andelman<br>Buckmaster de Wolf<br>HOWREY SIMON ARNOLD & WHITE LLP<br>301 Ravenswood Avenue<br>Menlo Park, CA 94025-3434<br>Tel: (650) 463-8100<br>Fax: (650) 463-8400 | Counsel for Kintera, Inc. |

**Via Facsimile and Overnight Mail**

X     (BY EXPRESS COURIER).  I placed true copies thereof in a sealed Fed Ex, overnight delivery envelope, air bill addressed as shown, for collection and delivery pursuant to the ordinary business practice of this office which is that correspondence for overnight delivery via courier service is collected and deposited with the courier service representative on the same day in the ordinary course of business.

X     (BY FACSIMILE).  At approximately 3:30 p.m., by use of facsimile machine, I served a copy of the above documents.  The facsimile machine that I used

Heller
Ehrman
White &
McAuliffe LLP

CERTIFICATE OF SERVICE                                     02CV0264M(LSP)

1      complied with California Rules of Court, Rule 2003(3) and no error was

2      reported by the machine.  Pursuant to California Rules of Court, Rule 2005, I

3      caused the machine to print a transmission record of the transmission with

4      successful transmission.

5          I declare under penalty of perjury under the laws of the state of California that the

6 foregoing is true and correct and that this proof of service was executed on August 1, 2003 at

7 San Diego, California.

8

9                                    Michelle C. Henderson

10

11

12

13 SD 604708 v2
8/1/03 1:42 PM (39050.0001)

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Heller
Ehrman
White &
McAuliffe LLP

CERTIFICATE OF SERVICE         3         02CV0264M(LSP)